IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOWELL RUSSELL PUGH, JR., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0512 |
| | § | |
| ALFRED C. JANICEK, JR., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se*, filed this section 1983 complaint against prison officials and employees Donna Cabeen, Shawnique F. Cooper, Donna M. Collora, Tommy J. Crane, Jr., Shanta Crawford, Isaac G. Eubanks, John C. Fontenot, Pablo Gomez, Richard A. Gunnells, Charles Hill, Jr., Tricia Hollingsworth, Alfred C. Janicek, Jr., Shirley A. Jordan, Velma Moncada, Charles A. Nagel, William Nowlin, Richard Thomas, Jr., Gary A. Wakefield, and Betty Williams, in their official and individual capacities, for violations of his civil rights.

Defendants filed a motion for summary judgment (Docket Entry No. 43), to which plaintiff filed a response (Docket Entry No. 46). Although plaintiff requested, and was granted, additional time to file an amended or supplemental response to the motion for summary judgment, and despite the expiration of nearly one year since the filing of his original response, plaintiff has not filed an amended or supplemental response.

Having carefully considered the motion, the response, the probative summary judgment evidence, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons that follow.

## I.  BACKGROUND AND CLAIMS

Plaintiff complains that, during work on July 13, 2006, he slipped and fell in a puddle of water outside the prison dining hall while pushing a barrel on rollers, and injured his back, hip, and knee.  He claims that he fell because prison officials forced him to work in the kitchen in violation of his medical restrictions, and that prison medical care providers gave him improper pain relief medication following the incident.  He further claims that, because he complained about his working conditions and medical care, prison officials retaliated against him with disciplinary convictions for failing to turn out for work two weeks later.  The disciplinary convictions rendered him ineligible for prison educational opportunities.  Plaintiff also complains that prison officials failed to investigate and respond to his grievances concerning these matters.  Plaintiff seeks monetary damages and injunctive relief to stop defendants "from acting with deliberate indifference."

Defendants argue that these claims are without merit and should be dismissed.

## II.  SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to

2

judgment as a matter of law. FED. R. CIV. P. 56(c).  In deciding a motion for summary judgment, the district court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).  The movant may accomplish this by showing that the non-moving party has presented no probative evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

## III.  CLAIM FOR VIOLATION OF WORK RESTRICTIONS

Plaintiff claims that he was seriously injured when he slipped and fell while working kitchen duty. He argues that defendants were deliberately indifferent to his health and safety by forcing him to work kitchen duty against his medical restrictions.

In her affidavit submitted in support of defendants' motion for summary judgment, Natascha Dumas, M.D., testified as follows:

> My examination indicates that Pugh is in good overall health with the exception of chronic back pain, which the records indicate began before his incarceration. He was rarely seen by a medical provider from 1997 to 2007 for any condition other than lower back pain. He was seen occasionally for asthma, allergies and eczema, a benign skin condition. He was initially seen in 1997 for his complaints of lower-back pain.

> Pugh was diagnosed with chronic lower-back pain with radiculitis secondary to spondylolysis of L4 with minimal spondylolisthesis of L4-L5 by an orthopedic surgeon on March 18, 2003. He underwent an MRI in 2003, which further revealed degenerative disc disease with discogenic sclerosis and bilateral neural foraminal stenosis at L4-L5 and similar changes seen [at] L5-S1 but to a lesser degree.

> Pugh received medication for the pain associated with his back and was given appropriate work restrictions of no lifting over 25 pounds, no bending at the waist and no walking on wet or uneven surfaces. Pugh also received a steroid injection in the lumbar area for pain relief, which seemed to benefit him greatly.

> On July 13, 2006, Pugh was evaluated by Margaret Mosley following the reported accident. From the records it appears that Pugh had some swelling, and a contusion in the lower lumbar area was noted by the nursing staff. The patient was given anti-inflammatory medication for pain relief, muscle relaxers, an ice pack and a two-day period off from work. A plain film x-ray also was ordered to check for fractures. The x-ray study showed old/chronic conditions, but indicated no new changes to suggest any fractures or dislocation.

> Pugh was again seen on July 24, 2006, by Mosley complaining of right knee pain, neck pain and back pain. Pugh's subjective complaints were not fully substantiated by the subsequent physical exam. Based on these findings, there was no indication for change in the treatment plan.

Pugh was again seen by Mosley on August 1, 2006, for similar complaints. At that time he was referred to physical therapy for evaluation and treatment of lower back pain.

The records further reflect that while awaiting evaluation for physical therapy, the plaintiff was seen by Charles Nagel, PA, on August 14, 2006, for right knee pain, hip pain and back pain. Nagel concurred with Mosley's treatment plan for physical therapy assessment and treatment. Pugh thereafter received two months of physical therapy and the pain in his back improved. During the two-month period of therapy, Pugh complained once of neck pain, which was appropriately treated with anti-inflammatory medication.

Pugh has complained many times of back pain, right knee pain, neck pain and hip pain since his accident and since concluding physical therapy. On each exam, however, there were no objective findings to support the degree of pain the patient reported. On Jan[uary] 25, 2007, the plaintiff was referred to orthopedic surgery for evaluation and recommendation for treatment.

In light of Pugh's history of chronic lower back pain, I believe that the treatment rendered by Mosley and Nagel was medically appropriate. When the treatment available on the TDCJ unit was not helping his condition, Pugh was referred for further care and evaluation.

It is my opinion, to a reasonable degree of medical certainty, that Pugh had a flare-up of his pre-existing back pain after he fell on July 13, 2006. It does not appear that any other injury of Pugh's neck, knee or hips from the fall could be verified on exam. I believe the job of pushing a barrel of ice while working as a waiter in the kitchen was appropriate given his work restrictions of no lifting more then 25 pounds, no walking over 400 yards, and no bending at the waist.

(Docket Entry No. 44, Exhibit H.)

In his affidavit submitted in support of the motion for summary judgment, Charles Nagle testified, in relevant part, as follows:

On August 13, 200[6], I examined Pugh in connection with an injury he suffered on July 13, 2006, after he allegedly fell in the unit dining hall. I

found no significant abnormalities or neurological deficits. My exam revealed no significant findings of residual effects. I recommended continuation of medical management provided by Mosley. This was the last medical encounter I had with Pugh.

\*     \*     \*     \*

Pugh has a documented history of prior injury to his back and arm suffered in a motor vehicle accident [in] 1995 before his incarceration. When he entered prison, Pugh was – like all new prisoners – evaluated by UTMB Correctional Managed Health Care and was given appropriate work restrictions based upon his medical conditions at that time.

Pugh complained about his lower back and arm pain and has been evaluated numerous times throughout his incarceration. In my experience, Pugh has a documented pattern of sending in sick call requests and not showing up for the scheduled examination. Access to care was never denied.

Pugh alleges a 'severe' injury suffered on July 13, 2006, when in fact none of the subsequent medical examinations indicated 'severe' findings. There were no neurological deficits, no physical defects and no significant changes to the x-ray films.

Pugh was evaluated by the Orthopedic Service several times during his incarceration at the Ellis Unit. MRI findings in 2003 revealed minimal abnormalities. Two subsequent x-ray evaluations revealed no gross abnormalities.

Pugh's claim of serious injury and his claim of deliberate indifference are simply unfounded. Pugh had pre-existing conditions. No significant abnormalities were discovered immediately after his injury, and no gross abnormalities were found in subsequent studies. Pugh was never denied access to health care. He was evaluated and treated appropriately at each appointment he kept based upon his reported symptoms and objective examination findings. Pugh is simply uninformed about his treatment. For example, nortriptyline, which Pugh repeatedly asserts is an antidepressant, is often prescribed for moderate chronic pain.

After reviewing the medical records, I can only repeat what those providers found and recommended and reassert that nothing in Pugh's record shows that he suffered a serious or severe injury on July 13, 2006, or that any UTMB provider was deliberately indifferent to his serious medical needs.

(Docket Entry No. 44, Exhibit I.)

At the time of his accident on July 13, 2006, plaintiff's medical work restrictions prohibited him from walking in excess of 400 yards, lifting over 25 pounds, bending at the waist, reaching over the shoulder, repetitive hand use, and walking on wet or uneven surfaces. (Docket Entry No. 44, Exhibit A, p. 6.)  Plaintiff alleges that on July 13, 2006, while assigned to waiter duty in the kitchen, he slipped and fell while pushing a "200 or 250 pound" barrel on rollers across a floor.  He contends that this work assignment violated his medical work restrictions because it required him to lift over 25 pounds and walk on a wet or uneven floor surface.  Plaintiff presents no probative summary judgment evidence that, in performing this work assignment, he was required to *lift* the barrel; he was not restricted from *pushing* any item, particularly one on rollers.  To the contrary, in responding to plaintiff's ensuing grievance following the incident, prison officials informed him that the barrel did not weight "200 or 250 pounds," and  that he was not instructed to lift the barrel. (Docket Entry No. 44, Exhibit F, p. 1447.)  The incident report shows that plaintiff was rolling the barrel across the floor. *Id.*, p. 1450.  Plaintiff's supervisor reported that the floor was not wet at the time. *Id.*  Plaintiff's statement that he "slipped on soapy water in kitchen" while moving the barrel does not stand as probative evidence that he was required, in the

7

performance of his work duties, to walk on wet or uneven floor surfaces. *Id.*, p. 1455. Inadvertently walking through a wet area on a floor is not the factual equivalent of being forced to perform normal work duties on "wet or uneven floor surfaces."

A prison official acts with deliberate indifference only if he knows that the inmate faces a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). If a prison official assigns an inmate to a work detail knowing that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference in violation of the Eighth Amendment. *Mendoza v. Lynaugh*, 989 F.2d 191, 194 (5th Cir. 1993). Plaintiff presents no probative summary judgment evidence that, in the normal course of performing his kitchen work assignment, he was obligated to work on wet or uneven surfaces. Nor does he allege or establish that, at the time of the incident, he was specifically ordered to push the barrel through the wet, soapy area.

The record does not demonstrate that defendants were deliberately indifferent to plaintiff's health or safety in assigning him to work as a waiter in the kitchen. As no constitutional violation is shown, defendants are not liable to plaintiff in either their individual or official capacities. Defendants are entitled to summary judgment dismissing plaintiff's claims regarding his work assignment.

8

## IV.  CLAIM FOR IMPROPER PAIN MEDICATIONS

Plaintiff complains that his prison medical care providers improperly prescribed nortriptyline for pain relief.  He asserts that nortriptyline is an antidepressant medication, not a pain reliever, and that the medical care providers were deliberately indifferent to his serious medical need for pain relief following his slip and fall accident.

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834.  The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk.  *Id.*  The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it.  *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).  Facts underlying a claim of deliberate indifference must clearly evince the medical need in question and the alleged official dereliction.  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.*  Mere negligence does not constitute a section 1983 cause of action.  *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000).

9

In his affidavit submitted in support of the motion for summary judgment, defendant Charles A. Nagel, P.A., testified that, "Pugh is simply uninformed about his treatment. For example, nortriptyline, which Pugh repeatedly asserts is an antidepressant, is often prescribed for moderate chronic pain." (Docket Entry No. 44, Exhibit I, p. 3.) The record also show that plaintiff received a steroid injection in the lumbar region for pain relief. (Docket Entry No. 44, Exhibit H, p. 2.) Plaintiff concedes that defendants prescribed pain medications, anti-inflammatory medications, and other treatments for his discomfort, and he agrees that he was examined and treated by prison medical care providers.

Plaintiff's conclusory allegation that nortriptyline was "inappropriate" for pain relief is insufficient to raise a genuine issue of material fact precluding summary judgment on this issue. Nor does an inmate's disagreement with medical treatment evince deliberate indifference to his serious medical needs. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997). Plaintiff presents no probative summary judgment evidence that his medical care providers were deliberately indifferent to his serious medical needs regarding their choice of pain medication or their exercise of medical judgment regarding his care.

As no constitutional violation is shown, defendants are not liable to plaintiff in either their individual or official capacities. Defendants are entitled to summary judgment dismissing this claim.

## V.  RETALIATORY DISCIPLINARY CONVICTIONS

Plaintiff asserts that, following his slip and fall incident, he received four disciplinary convictions in retaliation for his complaints regarding his work assignment and medical care.  He states that he received these disciplinary convictions for not reporting to work, and that he failed to turn out for work two weeks after the incident because of pain.  (Docket Entry No. 10, p. 9.)  Due to these disciplinary convictions, plaintiff became ineligible to participate in prison educational programs.

The slip and fall incident occurred on July 13, 2006.  Plaintiff's disciplinary records reveal that he refused to turn out for work as a kitchen waiter on July 27, 28, 29, and 30, 2006.  (Docket Entry No. 44, Exhibit A, p. 37.)  On each occasion, he told prison officials that he hurt and was not going to work.  He acknowledged that he had no medical pass or lay-in to excuse his failure to work.  *Id.*, pp. 33, 39-40.  When contacted by disciplinary investigators regarding plaintiff's claims of inability to work, defendant Nagel informed them that there was no medical reason for plaintiff to miss work.  *Id.* pp. 34, 41.  Plaintiff waived his right to attend the disciplinary hearings, and was found guilty on each of the four charges for failing to work without a legitimate reason.  *Id.*, p. 44.

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  The inmate must allege more than his personal belief

that he is the victim of retaliation. *Id.* Mere conclusionary allegations of retaliation will not suffice to withstand a proper motion for dismissal of the claim. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

Plaintiff in the instant case fails to establish causation; he does not show that, but for a retaliatory motive, he would not have received the disciplinary convictions. To the contrary, the probative evidence clearly shows that plaintiff knowingly failed to work despite statements by his medical care providers that he had no medical reason to miss work. Plaintiff refused to work, and he received disciplinary convictions for his refusal to work. For like reason, plaintiff cannot complain that the disciplinary convictions rendered him ineligible to participate in prison educational programs. Because he fails to show that the underlying disciplinary convictions were retaliatory, he cannot show that, but for the retaliation, he would have been eligible to participate in the program. Moreover, because no retaliation has been shown, plaintiff fails to establish that the defendants conspired to retaliate against him.

No probative summary judgment evidence of either a retaliatory motive or causation is shown, and defendants are entitled to summary judgment dismissing plaintiff's claims for retaliation and conspiracy to retaliate.

## VI.  FAILURE TO INVESTIGATE GRIEVANCES

Plaintiff claims that defendants failed to investigate or respond properly to his letters, I-60s, and formal grievances regarding the complaints made the basis of this lawsuit. Inmates do not have a protected liberty interest in having their grievances resolved to their satisfaction.  *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).  As plaintiff here relies on a legally nonexistent interest, any alleged due process violation arising from the defendants' purported failure to investigate or respond to his grievances is groundless and fails to state a claim for which relief can be granted.

These claims are **DISMISSED** for failure to state a cognizable section 1983 civil rights claim.

## VII.  CONCLUSION

For these reasons, the Court **GRANTS** defendants' motion for summary judgment (Docket Entry No. 43).  This case is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on this the *17*th day of March, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

13